

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-146-CV

IN THE INTEREST OF M.C.,
A CHILD

------------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

After a bench trial, the trial court terminated Appellant C.C.'s parental rights to his son M.C.[2] In three issues, Appellant contends that the evidence is factually insufficient to support the trial court's findings that he knowingly placed or knowingly allowed M.C. to remain in conditions or surroundings that endangered his physical and emotional well-being, that Appellant engaged in conduct or knowingly placed M.C. with persons who engaged in conduct that

---

[1] *See* Tex. R. App. P. 47.4.

[2] M.C.'s mother's right were also terminated, but she did not appeal.

endangered his physical or emotional well-being, and that the termination of the parent-child relationship between Appellant and M.C. is in M.C.'s best interest. Because the evidence is factually sufficient to support the findings, we affirm the trial court's order of termination.

In his second issue, Appellant contends that the evidence is factually insufficient to show that he engaged in conduct or knowingly placed M.C. with persons who engaged in conduct that endangered M.C.'s physical or emotional well-being. As we have explained in a similar case,

> Under section 161.001(1)(E) of the Texas Family Code, the term "endanger" means to expose to loss or injury, to jeopardize. Accordingly, when analyzing a jury's findings pursuant to subsection (E), we must determine whether sufficient evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. Termination under section 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. However, it is not necessary that the parent's conduct be directed at the child or that the child actually suffer injury. The specific danger to the child's well-being may be inferred from parental misconduct standing alone.

> To determine whether termination is necessary, courts may look to parental conduct both before and after the child's birth. Further, a father's conduct prior to the establishment of paternity may be considered as evidence of an endangering course of conduct. Consequently, scienter is only required under subsection (E) when a parent places the child with others who engage in an endangering course of conduct.

2

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct.[3]

The evidence shows that CPS received a referral against Appellant in January 2007 for neglectful supervision and drug use, among other things. A CPS investigator visited the home and spoke to M.C., who was twelve years old at the time of trial. M.C. denied any personal knowledge of drug use by his father but reported witnessing domestic violence between Appellant and his then estranged wife N.C. M.C. told the investigator that his father had broken a door to get to N.C., and the investigator saw a crack in a door while at the home. At some point, M.C. also reported to CPS that Appellant had punched holes in the walls at different houses that they had lived in over the past several years when he was angry at N.C. and that Appellant and N.C. had fought in the street once, and the police had come. M.C. did not report that Appellant was ever physically violent with another person.

The day after CPS received the referral and investigated the home, Appellant admitted to the investigator that he had been using methamphetamine for the past nine months and had last used

---

[3] *In re R.W.*, 129 S.W.3d 732, 738–39 (Tex. App.—Fort Worth 2004, pet. denied) (citations omitted).

methamphetamine two weeks earlier. He also admitted to using methamphetamine at the residence while M.C. was sleeping as well as to using drugs elsewhere with N.C.

CPS removed M.C. from the home after Appellant subpoenaed the investigator to appear at his divorce trial. The investigator testified that the removal was necessary because Appellant would not work services, voluntarily place M.C. with other family members, or take drug tests.

In May 2007, Family Court Services (FCS) became involved because of the pending divorce of Appellant and N.C. Appellant took court-ordered drug tests in May and June, but not in the following five months during which FCS was still involved. His May 30, 2007 hair sample tested positive for amphetamines and methamphetamine, but he testified that a later test was negative.

At trial, Appellant admitted to being a drug addict and that using drugs was reckless behavior for a parent. He admitted testing positive for and using methamphetamine after CPS removed M.C. from the home and as recently as three-and-a-half weeks before trial; he also admitted that he had used methamphetamine daily a year before trial. He testified that he did not remember where he used drugs while the case was pending because he had blackouts.

4

Appellant testified that he was bipolar and severely depressed, that he made many threats of suicide after M.C.'s removal, and that he actually had pills (Seroquel, which he later testified were to help him sleep and not have night terrors) in his hand to take because he "just wanted to sleep, sleep forever" at a point within the last three months before trial. He also testified, "I've just forgotten who I was lately. I don't even know what's happening in my life[,]" and "I wake up, I don't even know who I am. I need help."

Appellant admitted that he and N.C. had shoved each other. He also admitted that he had broken a door in two to get to N.C. He testified that M.C. was in another room at the time but conceded that M.C. would have heard the altercation. Appellant admitted that he would also punch holes in the wall whenever he would get agitated and that he would get agitated whenever N.C. threatened to kill herself. He admitted that those behaviors did not provide an appropriate, safe, healthy environment for M.C.

Additionally, an aggravated sexual assault of a child complaint involving a fifteen-year-old female had been filed against Appellant at the time of trial, although the case had not yet been submitted to the grand jury. The CPS caseworker testified that Appellant told her that

> he was a victim . . . of a 15-year-old [the complainant] who had raped him. He stated that she was spending the night, . . . that he was caring for her and her two brothers, . . . and that while he was

5

asleep, she had gotten on top of him, fully penetrated himself, and that he was dreaming that it was [N.C.], his ex-wife, and then he woke up and realized that it wasn't . . . and rolled her over, and he got up.

This alleged incident occurred after M.C.'s removal.

Applying the appropriate standard of review,[4] we hold that the evidence is factually sufficient to show that Appellant engaged in conduct or knowingly placed M.C. with persons who engaged in conduct that endangered M.C.'s physical or emotional well-being. We therefore overrule his second issue and do not reach his first issue.[5]

In his third issue, Appellant contends that the evidence is factually insufficient to show that termination of his parental rights to M.C. is in M.C.'s best interest. In addition to the above evidence, the evidence at trial showed that Appellant loved his son and had ensured his son's school attendance before the removal. After the removal, Appellant regularly visited with his son and completed some of the services listed in the family service plan—parenting classes, a psychological evaluation, and a drug/alcohol assessment. He refused

---

[4] *See* Tex. Fam. Code Ann. § 161.001(1)(E) (Vernon Supp. 2008); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

[5] *See* Tex. R. App. P. 47.1; *In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.).

"further sexual assessment" (a plethysmograph) absent court order, attended some counseling but did not complete it, and did not complete drug treatment, although he testified that he had a few days of inpatient care and had attended NA meetings. Even though he had told CPS while the case was pending (and he was employed) that he made too much money to get outpatient drug treatment, at trial, after he had lost his job, he testified that he wanted outpatient drug treatment and would go to inpatient treatment if the State paid for it.

Appellant testified that he needed additional help in response to the State's question regarding his ability to meet M.C.'s daily needs.

At the time of trial, M.C. was doing well in a foster home and passing his classes in school. He was seeing a therapist weekly and taking medication for ADHD and anger management issues. M.C. wanted to live with his father, but his ad litem reported that M.C. "knows his dad has problems, and he can't live with him, and he wanted to live with his [stepmother, N.C.]." N.C. had visited M.C. regularly during the pendency of the termination case and was planning to get her own apartment the following January. The State planned to conduct a home study if and when N.C. got her own apartment and evaluate her for adoptive placement. If that plan failed, then the State planned to place M.C. in a dual licensed home with a goal of adoption. M.C.'s ad litem reported that

7

he is very bright and very adoptable.  N.C. did not testify.

Applying the appropriate standard of review[6] and considering the *Holley*[7] factors and the statutory factors for evaluating Appellant's willingness and ability to provide M.C. with a safe environment,[8] we hold that the evidence is factually sufficient to support the trial court's finding that the termination of Appellant's parental rights is in M.C.'s best interest.  We therefore overrule Appellant's third issue.

Having held the evidence factually sufficient to support the trial court's findings that Appellant engaged in conduct that endangered M.C.'s physical or emotional well-being and that the termination of the parent-child relationship between Appellant and M.C. is in M.C.'s best interest, we affirm the trial court's order of termination.

PER CURIAM

PANEL:  DAUPHINOT, J.; CAYCE, C.J.; and LIVINGSTON, J.

DELIVERED:  November 26, 2008

---

[6] *See* Tex. Fam. Code Ann. § 161.001(2); *H.R.M.*, 209 S.W.3d at 108; *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *C.H.*, 89 S.W.3d at 28.

[7] *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

[8] *See* Tex. Fam. Code Ann. § 263.307(b) (Vernon 2002).